**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| In re SHANNON W. HOPKINS and CARRIE B. HOPKINS, </br></br>Debtors. | ) Case No. 05-64911-LYN </br> ) </br> ) </br> ) </br> ) |

**<u>ORDER</u>**

For the reasons stated in the accompanying memorandum, the motion of the United States trustee to dismiss this case under 707(b) is denied.

So ORDERED.

Upon entry of this Order the Clerk shall forward copies to the United States trustee, the chapter 7 trustee, the Debtors and David Crandell, Esq., counsel for the Debtors.

Entered on this  1st day of December, 2006.

_____
William E. Anderson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re SHANNON W. HOPKINS and CARRIE B. HOPKINS, <br><br>　　　　　Debtors. | ) Case No. 05-64911-LYN <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM

This matter comes before the court on a motion by the United States trustee under 11 U.S.C. §707(b) of the bankruptcy code to dismiss this case for substantial abuse. Shannon W. Hopkins and Carrie B. Hopkins ("the Debtors") oppose the motion.

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this court may render a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed. R. Bankr. P. 7052, which is made applicable in this proceeding by Fed.R.Civ.P. 52.

For the reasons stated below, the Court concludes that it would not be a substantial abuse of the provisions of chapter 7 for the Debtors to continue under this chapter. The motion will be denied.

*I. Facts*

1

On October 16, 2005, the Debtors filed a joint chapter 7 petition. The Debtors scheduled real property valued at $104,900.00.[1] They scheduled total secured claim in the amount of $162,124.00, and general unsecured claims in the amount of $49,651.00.[2] The secured debt is comprised primarily of two mortgages on the Debtors' residence, which they value at $104,900.00 on their original schedules. They did not schedule any priority unsecured claims.[3]

Mr Hopkins has been employed as a Technician for Frontier Spinning Mills, Inc., since 1997. When they filed their petition, Mrs. Hopkins was employed as an assistant principal in the Rockingham County School System. Mr. Hopkins scheduled monthly gross income in the amount of $2,472.00[4] and monthly net income of $1,605.00.[5] His monthly net income is calculated in part through a 401(k) retirement deduction of $148.00 per month. Mrs. Hopkins scheduled monthly gross income in the amount of $4,120.00[6] and monthly net income of $2,647.00.[7] Her monthly net income is calculated in part through a 457(b) retirement plan deduction in the amount of $247.00 per month.

The Debtors' total monthly net income is $4,252.00.[8] The Debtors scheduled total

---

[1] See Debtors' Schedule A.

[2] See Debtors' Schedules D and F.

[3] See Debtors' Schedule E.

[4] See Debtors' Schedule I.

[5] See Debtors' Schedule I.

[6] See Debtors' Schedule I.

[7] See Debtors' Schedule I.

[8] See Debtors' Schedule I.

2

monthly expenses in the amount of $4,306.00.[9]  The Debtors have two dependents.

On February 17, 2006, the United States trustee filed a motion under Section 707(b)[10] to dismiss this case on the grounds that granting relief would constitute substantial abuse.

## *II. Discussion*

A case under chapter 7 may be dismissed if (1) the debtor's debts are primarily consumer debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to grant relief.  11  U.S.C. § 707(b)[11].

"There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b).  The burden of proof and the burden of production in a motion to dismiss for substantial abuse clearly rests with the moving party, in this case the United States trustee. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)).  The presumption, however, is meant to be something more than a rule about the burden of proof since that burden would already have been on the party seeking to dismiss the case.  Collier, supra.  "Therefore, it appears that the presumption is an indication that in deciding the issue, *the court should give the benefit of any*

---

[9]    See Debtors' Schedule J.

[10]    Herein, "Section" refers to the given section in the bankruptcy code.  The bankruptcy code is codified at 11 U.S.C. § 101 et seq.

[11]    Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

*doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present." 4 Collier on Bankruptcy at 707-28.  (Emphasis added.)

The first issue is whether the Debtors' debts are consumer debts.  Consumer debts are those "incurred by an individual primarily for a personal, family, or household purpose".  11 U.S.C. § 101(8).  The Debtors do not deny that their debts are primarily consumer debts in this case.

We turn now to the second issue, that of substantial abuse.  In Green, the Fourth Circuit provided trial courts with guidance to determine whether granting relief to a debtor would constitute substantial abuse.  In Green, the debtor was employed as a bus driver, a job that he had held for at least 13 years.  His income exceeded his necessary expenses by $638.00 per month.  He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months and estimated that he would only earn $26,000.00 in 1989.  The Bankruptcy Court granted the motion to dismiss the debtor's case solely on the grounds that he had disposable income.  The United States District Court affirmed the decision of the Bankruptcy Court.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute substantial abuse.  Green, 934 F.2d at 571-572.  Rather, the Court concluded that "the determination must be made on a case-by-case basis, in light of the totality of the circumstances."  Green, 934 F.2d at 572.   The Court remanded the case to the Bankruptcy Court with instructions to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor had disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a

trial court should consider disposable income in rendering a decision on a motion under section 707(b).[12] The Court first held that the existence of disposable income does not, without more, constitute substantial abuse. The Court based the holding on three inquiries.

The Court first considered a *per se* rule basing dismissal solely on the existence of disposable income by looking at the Congressional history.

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass these countervailing considerations in all situations. Nevertheless, in unsuccessfully attempting to carve out such a definition, Congress considered and rejected the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D.Ohio 1968).

Green, 934 F.2d at 571.

The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law. "The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per se* rule we are urged to adopt would render this presumption [in favor of granting the relief requested by the debtor] toothless." Green at 573.

Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and section 109[13] of the Bankruptcy Code in particular.

---

[12] Disposable income is defined, for purposes of Section 1325, which requires the debtor to pay all of his or her disposable income into the plan, as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ." 11 U.S.C. § 1325(b)(2).

[13] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
    (1) a railroad;
    (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a New Markets Venture Capital company as defined in section 351 of the Small Business Investment Act of 1958, a small business investment company licensed by the Small Business Administration under subsection (c) or (d) of section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or

5

      Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy. Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990). Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive." *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order; *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

Id.

The Fourth Circuit Court of Appeals also provided a non-exclusive list of five additional factors that trial courts should consider when entertaining a motion to dismiss for substantial abuse. They are:

(1)    Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)    Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3)    Whether the debtor's proposed family budget is excessive or unreasonable;

(4)    Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

---

similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act, except that an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the Federal Reserve System; or
(3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

  (5)  Whether the petition was filed in good faith;

Green, 934 F.2d at 572.

  The Fourth Circuit Court of Appeals also cited three opinions that trial courts might find helpful in considering motions under section 707(b), thus providing three additional, if not distinct, considerations.

  (6)  Whether the debtor engaged in free-wheeling spending[14];

  (7)  Whether the debtor altered monthly obligations in statements to the court at least three times[15]; and

  (8)  Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay favored creditors[16].

Green, 934 F.2d at 573.

  As with any totality-of-the-circumstances test, the analysis does not consist of an accounting, rather, each factor is considered in light of its weight and relevance in the case under consideration. A factor that is irrelevant in one case may be determinative in another.

  A. The Debtors' Disposable Income.

  Whether a debtor has disposable income that he or she could use to fund a chapter 13 plan is the primary factor is to be considered by a bankruptcy court when considering a motion to dismiss a case for substantial abuse. See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005). ("[T]he ability to repay, although not a dispositive factor, is the primary factor in determining

---

[14] See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

[15] See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[16] See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

substantial abuse.")

*Gross and Net Monthly Income.* The Debtors originally scheduled Mr. Hopkins' gross monthly income in the amount of $2,472.00. They scheduled Mrs. Hopkins' gross monthly income in the amount of $4,120.00. They scheduled their net incomes at $1,605.00 and $2,647.00 respectively. Their scheduled total net income is $4,252.00[17].

The Debtors deductions on their original schedules include $148.00 for a contribution to Mr. Hopkins 401(k) retirement account and $247.00 for a contribution to Mrs. Hopkins 457(b) retirement account. The United States trustee argues that the these amounts should be added to the Debtors' net income, dollar for dollar.

Mrs. Hopkins indicated that the correct amount for her contribution was $100.00 per month.[18] The difference of $147.00 ( = $247.00-$100.00) should be added dollar for dollar to the Debtors' net income. The balance of $248.00 may only be added in an after-tax amount. The Court assumes that the Debtors received a 30% tax reduction based on the $248.00 in contributions. The proper amount to be added to the Debtors' net income is 70% of $248.00 or approximately $173.00. The total adjustment is $320.00 ( = $147.00 + $173.00). The United States trustee also argues that the Debtors' tax returns, averaging $250.00 per month should be added to their net income. The Debtors' adjusted net monthly income per month was $ 4,822.00 ( = $4,252.00 + $320.00 + $250.00) on the date of petition.

---

[17]    On their amended schedules, filed on January 10, 2006, more than a month before the United States trustee filed this instant motion to dismiss, the Debtors indicate that Mrs. Hopkins' gross income was additionally reduced by $50.00 constituting $25.00 per month toward their children's college account. The United States trustee's analysis includes an addition to net income for this amount. Because the original schedules did not include this deduction, no addition is made in the analysis herein.

[18]    Transcript of Hearing: Page 38:25 to page 39:22. Mrs. Hopkins testified that she contributed $100 per month to her 457(b) pre-petition and that she no longer contributes to a retirement plan.

*Monthly Expenses.* The Debtors originally scheduled $4,306.00 in monthly expenses. In their amended Schedule J, also filed on January 10, 2006, they scheduled $4,255.00 in monthly expenses. The United States trustee does not object to any of the Debtors' expenses, other than the $611.00 monthly payment for the 2005 Trail Blazer. He does not, however, include this objection in his calculation of the Debtors' net disposable income.[19]

*Monthly Disposable Income and the effect on a Chapter 13 Plan.* Using their income on the date of petition and their expenses as amended, the Debtors' monthly disposable income for purposes of a chapter 13 plan would be $567.00 ( = $4,822.00 - $4,255.00). During the pendency of a thirty-six month chapter 13 plan, the Debtors could pay a total of $20,412.00. Of this amount the chapter 13 trustee would be paid approximately 10% or $2,041.00 and the Debtors' attorney would be paid approximately $2,500.00. Priority and general unsecured creditors would receive $15,871.00 ( = $20,412.00 - [$2,041.00 + $2,500.00]). The Debtors' unsecured claims are approximately $57,651.00 including an anticipated $8,000.00 deficiency claim based on the surrender of the 2001 Impala. If the Debtors were able to sustain their level of income on the date of petition[20], unsecured creditors would receive approximately 27.5% of their claims.

B. Other Green Factors to be Considered.

*(1) Financial Trauma.* The first factor other than disposable income mentioned in Green concerns whether the Debtor has experienced a financial trauma in the time leading up to the

---

[19] See United States trustee's Exhibit 8.

[20] Mrs. Hopkins now teaches school in a different school district. Her income has decreased to $38,990.00 per year, or $3,249.17 per month. This represents a decrease of more than $870.00 per month. See Transcript of Hearing: Page 5: 7-22 and Debtors' amended Schedule I, filed on July 14, 2006. Although the Schedules indicate that she is now earning $3,899.00 per month, Mrs. Hopkins testified that her annual income under her new contract is $38,990.00, or $3,249.00 per month. See Transcript of Hearing: Page 37:8 to page 39:24.

filing of the petition.   Financial traumas include such things as a medical debt, an involuntary change in employment, and a change in the family structure such as a divorce or the death of a spouse.  The United States District Court for the Western District of Virginia has commented on this issue thus:

> Under the first factor, the bankruptcy petition was not filed because of sudden illness, calamity, disability, or unemployment.  Courts have held that this factor weighs in favor of substantial abuse when filing is not due to some "unforeseen tragedy."  *In re Norris,* 225 B.R. 329, 333 (Bank.E.D.Va.1998);  *see In re Vansickel,* 309 B.R. 189, 211 (Bank.E.D.Va.2004).

Harrelson, 323 B.R. at 178.  In Vansickel, the Court discussed the relevance of a financial trauma in the determination of substantial abuse.

> Death, illness, unemployment and divorce are part of life's risks, part of the risks borrowers run when borrowing money and lender's run when lending money.   Absent more, the presence of those calamities tends to favor the relief the debtor seeks. . . . The presence of a calamity is probably more important than the absence of a calamity.

Vansickel at 215.

The Debtors have not sustained a catastrophic financial trauma, such as the loss of employment, or illness or divorce.  While there financial problems do not appear to be of their own conscious efforts, neither are they born of exogenous events foisted upon them by the vagaries of life.  To the extent that this factor is relevant it weighs in favor of granting the motion of the United States trustee.

*(2) Excessive Credit.*  The second factor requires the Court to ascertain whether the Debtors incurred cash advances and made consumer purchases *far* in excess of his or her ability to pay.  The Court in Vansickel addressed this factor.

> In considering whether a Chapter 7 debtor incurred cash advances and made consumer purchases far in excess of his or her ability to pay, under Fourth Circuit's *Green* test for determining whether a particular case constitutes "substantial abuse," court

10

should not interpret this factor broadly, as to do so would be contrary to the Bankruptcy Code's presumption in favor of relief; instead, this factor is more properly an examination of the nature of the debt incurred and of debtor's reasonable expectations at the time that the obligations were incurred.  Bankr.Code, 11 U.S.C.A. § 707(b).

Vansickel at 211.

In Vansickel, the United States trustee argued that the debtors' Schedule F spoke for itself, that the debtors overextended their ability to meet their current obligations, and that they voluntarily incurred consumer debts beyond their ability to pay them.  The Court concluded that the United States trustee had failed to prove his assertion.

> If this factor is broadly interpreted, all debtors start out with it weighing against them.   All debtors have incurred obligations in excess of their ability to repay them.  The very fact that they filed bankruptcy is evidence of this.   Such a broad interpretation is contrary to the presumption in favor of relief contained in § 707(b).  This factor is more properly an examination of the nature of the debt incurred and of the debtor's reasonable expectations at the time that the obligations were incurred.   Did the debtor have a reasonable expectation of paying the obligation, or repaying the debt?
> Were the obligations for luxury goods or services?   Were they consistent with the debtor's financial status in the community?   Was there a sudden unexplained change in spending patterns?   These questions are directed to the fundamental purpose of § 707(b), whether the bankruptcy system is being used by a debtor "to take *unfair* advantage of his creditors."  *Green,* 934 F.2d at 570 (emphasis added).
> Here, it cannot be said that the debts were excessive.   They are, in fact, relatively modest.  Nor can it be said that the debtors did not have a reasonable expectation of repaying them when they were incurred.   It is not known over what time the debts were incurred;  whether regular payments were maintained, and if so, how long;  whether the purchases were for luxury goods or services;  or whether one credit card was being used to pay others.   To make that finding, the court would need additional evidence of what was purchased and when.   The statutory presumption is in favor of the relief requested by the debtor.   The burden of proof is on the United States Trustee.   In the absence of evidence, the court cannot find that the debts were excessive and beyond the debtors' ability to pay.

Vansickel at 211-212.

In the case at bar, the United States trustee asserts that the Debtors filed their petition as a result of overspending over time and refusing to adjust their cost of living expenditures to reflect

11

the obligation to repay creditors.

As in <u>Vansickel</u>, the United States trustee has presented no evidence in support of this assertion. There is no evidence concerning the time span over which the Debtors incurred their debts; there is no evidence concerning their payment patterns prior to seeking the advice of counsel (in late 2004); and there is no evidence concerning whether they purchased luxury goods or services.

The Debtors unsecured debt consists primarily of credit card debt on two cards, some of which occurred more than three years prior to the filing of the petition when Mrs. Hopkins returned to school to obtain a Masters Degree.[21]

And there is evidence that when the Debtors received their tax returns, they used them to pay bills and current living expenses. Mr. Hopkins testified that none of the refunds was spent on consumer goods. Mrs. Hopkins testified that she used $1,700.00 to catch up on mortgage payments, $200.00 to pay a pediatrician's bill and some the remainder to purchase summer clothes for her five-year old who had outgrown his clothes from the previous year.[22] In the absence of evidence, the court cannot find that the debts were excessive or beyond the Debtors' ability to pay.

The United States trustee also asserts in the motion to dismiss that the Debtors' car payment of $611.00 per month is unreasonable in that the obligation was voluntarily incurred just two months prior to the filing and increased their required car payments. The facts do not support this assertion.

---

[21] Transcript of Hearing: Page 15:5-16.

[22] Transcript of Hearing: Page 41:12 to page 42:10.

Each of the Debtors' decisions regarding the purchase and disposition of vehicles has been reasonable and even prudent. In 2004, the Debtors owned two vehicles a 1993 Corolla with almost 200,000 miles on it that was valued one year later at $1,305.00 and a 2003 Trail Blazer with payments in the approximate amount of $551.00 per month.

Their children were one-year old and three-years old. At the end of the year, they decided to buy a third vehicle[23]. They purchased a two-year old Impala and in so doing incurred additional payments of $255.00 per month. The purchase was reasonable. First, as Mrs. Hopkins testified, they purchased the Impala because the Corolla had over 200,000 miles on it and was unreliable.[24] Given the anticipated increase in the size of their family and in the expected reduction in repair costs that would offset some of the payment, the decision was reasonable. Second, it would be folly to own an unreliable car in a family where both spouses worked full time.

In June of 2005, the Debtors owned three vehicles, the Corolla, the Impala, and a 2003 Trail Blazer. They decided to trade the 2003 Trail Blazer in on the 2005 Trail Blazer because it had more safety features and it had a third row seat. The Debtors wanted a third row seat because it would permit the Debtors to convey their children, who are three and five years old and must use car seats, and Mr. Hopkins' mother, who helps with the care of the children even though she experienced two mild heart attacks . The increase in the monthly payment from the 2003 Trail Blazer to the 2005 Trail Blazer was $50.00 per month.[25] The increase of only $50.00

---

[23]   Mrs. Hopkins testified that they purchased the 2001 Impala in December of 2004. Transcript of Hearing: Page 33:6-7.

[24]   Transcript of Hearing: Page 43:6-20.

[25]   Transcript of Hearing: Page 25:4 to page 27:7.

13

in the Debtors' monthly car payments is an amount that they could have reasonably assumed would be offset by a reduction in repair costs. Again, the purchase and trade-in was a reasonable and prudent decision, one designed to improve the family's condition, both financial and otherwise, at a minimum increase in monthly costs.

The Debtors' decision to surrender the Impala upon the filing of their petition is a further indication that they were not attempting to abuse the bankruptcy process.[26] The United States trustee argues that the Debtors should have surrendered the 2005 Trail Blazer. The Court disagrees. While the Debtors would have reduced their monthly payment costs by $361.00, they would have surely incurred an increase in repair costs that would have to some extent offset that savings. The Debtors also testified that they live at the bottom of a hill and the Impala has difficulty climbing the hill in certain winter weather conditions. And, as noted above, car payments totaling $611.00, with transportation costs of only $275.00 per month for a family in which both spouses are employed is quite reasonable.

This factor weighs heavily in favor of denying the motion to dismiss.

*(3) Excessive Budget.* The third factor concerns whether the Debtors' proposed budget is excessive or unreasonable. The United States trustee argues that the Debtors' is unreasonable in that it includes deductions for retirement payments and savings. This argument would seem to be supported by the fact that this court has increased the Debtors' net income by the tax-adjusted amount of those items. The problem is that this argument places the Debtors on the horns of a

---

[26] The Debtors surrendered the Impala ten days after they filed their petition. The next day, Mrs. Hopkins was in an accident and the Corolla was totaled. See Transcript: Page 5:7-22 and Page 22:4 to page 25:4. (Mr. Hopkins indicated that the Impala was surrendered the day before the accident and Mrs. Hopkins indicated that the accident occurred on October 26, 2005. From the date of petition through the date of the trial, the Debtors used the 2005 Trail Blazer and borrowed a vehicle from his parents.

14

dilemma. The United States District Court for the Western District of Virginia has addressed this issue in the context of an expense.

> . . . Schedule J, on which the disputed amounts were found is entitled "Current expenditures of individual debtors(s)." The debtors are obliged to schedule their payments accurately. They cannot unilaterally alter their contracts with [creditors] and declare their debts to be less than they actually are, nor can they deceptively write anything other than the actual amounts of their obligations. On the other hand, a court, in considering a hypothetical Chapter 13 plan, can disallow certain expenses as unnecessary to the support and maintenance of the debtor. The fact that the court found [expenses incurred to purchase and maintain certain assets] unnecessary does not constitute an automatic finding of abuse; it is hardly surprising that someone petitioning for bankruptcy has debts in excess of what a court might consider necessary. Rather, a finding of abuse is appropriate where a debtor has scheduled frivolous, wasteful, or unnecessary *discretionary* spending in an effort to hide disposable income which justly belongs to creditors. The U. S. Trustee's position would place debtors with large and arguably unnecessary debts in an unacceptable catch-22.

In re Fulcher, Civil Action No. 3:06-CV-0400 at page 6 (W.D.Va. 2006) (Emphasis in original.)

If the Debtors failed to scheduled the retirement deductions, the United States trustee would argue that they had improperly hidden the disclosure of those payments to the court. The Debtors have not suggested an improper budget by disclosing the retirement payments as of the date of petition.

The United States trustee does not argue that any of the Debtors' other scheduled expenses are excessive. The Debtors budget is not excessive. This factor weighs in favor of denying the motion of the United States trustee to dismiss this case.

(4) *The Debtors' Financial Condition.* The fourth factor concerns whether the Debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition. The United States trustee is to set forth in the motion all matters to be submitted to be considered by the court at the hearing. Fed. R. Bankr. P. 1017(e)(1). In his motion, the United States trustee asserts that the Debtors understated their gross income by

$250.00 per month, an amount representing the Debtors anticipated income tax refund of $3,000.00[27]. The Debtors, however, did disclose this amount on item 17 of their Schedule B, at which is written "Income Tax Refund". The Debtors schedules are very accurate. Furthermore they are reasonable. This factor weighs in favor of denying the motion to dismiss.

*(5) Bad Faith.* The United States trustee does not challenged the Debtors' good faith in filing this petition. This factor weighs in favor of denying the motion to dismiss.

### *III. Conclusion*

The burden of proof is on the United States trustee to prove beyond a preponderance of the evidence that the prosecution of this chapter 7 case would constitute a substantial abuse. The United States trustee's case is based on four facts: (1) The Debtors have relatively high income; (2) the Debtors placed part of their income in tax-deferred accounts; (3) the Debtors' income is enhanced by federal and state tax refunds; and (4) the Debtors purchased a 2001 Chevrolet Impala in January of 2005 and a 2005 Chevrolet Trail Blazer in 2005.[28]

The first three points concern the Debtors' ability to fund a chapter 13 plan. As of the date of petition, the Debtors had sufficient income to pay unsecured creditors approximately 27.5% of their claims. This standing alone is not sufficient to dismiss a chapter 7 case.

For the reasons discussed above, the fourth point does not convince the court that the Debtors engaged in conduct that would make it a substantial abuse of the provisions of the Bankruptcy Code to permit the Debtors to proceed in chapter 7. None of the other factors

---

[27] In 2004, the Debtors grossed $67,854.00 and received a refund of $3,068.00. See United States trustee's Exhibit 5. In 2005, the Debtors grossed $72,416.00 and received a refund of $2,632.00. See United States trustee's Exhibit 6.

[28] Opening statement of the United States trustee. Transcript of Hearing Page 3:6-21.

16

suggested by the Court in <u>Green</u> counsel dismissal of this case.  The Debtors are not unscrupulous individuals seeking to gain the Court's assistance in a scheme to take unfair advantage of their creditors.  It would not be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to permit the Debtors to continue as debtors under chapter 7.   The motion to dismiss this case shall be denied.

An appropriate order shall issue.

Upon entry of this Memorandum the Clerk shall forward copies to the United States trustee, the chapter 7 trustee, the Debtors and David Crandell, Esq., counsel for the Debtors.

Entered on this  1st  day of December, 2006.

_____
William E. Anderson
United States Bankruptcy Judge